# PIERCE ET AL. *v.* UNITED STATES.

## APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE EIGHTH CIRCUIT.

No. 173. Argued January 24, 1921.—Decided March 7, 1921.

1. A judgment for a fine imposed in a criminal case is enforceable, like a civil judgment, by execution (Rev. Stats., § 1041), and by creditor's bill. P. 401.
2. A corporation against which an indictment was pending for taking rebates in violation of the Elkins Act, divested itself of its assets by distributing them among its stockholders, who were also its officers and had notice of the prosecution. *Held,* that the United States, having secured a conviction a year later upon which a fine

was imposed, was entitled to pursue the assets by creditor's bill against the stockholders to satisfy the judgment. P. 402.

3. The United States, to satisfy a judgment recovered and upon which execution has been returned unsatisfied in one district, may bring a creditor's bill in another district in another State, without a preliminary issue of execution and return of *nulla bona* there. So *held* where it was agreed that the judgment debtor had no property out of which the judgment could have been satisfied at law. P. 404.

4. A corporation against which an indictment was pending under the Elkins Act, sold all its property to another corporation which assumed its "debts, obligations and liabilities" as part of the purchase price. *Held*, that, assuming the second corporation thus became liable to satisfy a judgment for a fine imposed upon a subsequent conviction in the criminal case, the existence of such legal remedy did not operate to debar the United States from seeking satisfaction of the judgment in equity by a creditor's bill against the stockholders of the first corporation; nor did the institution by the United States of a suit against the second company to subject land, part of the property purchased, to its judgment, amount to an election of remedies. P. 404.

5. Inasmuch as a judgment in favor of the United States may be made the basis of an execution in any State and district (Rev. Stats., § 986), the objection that a corporation against which the United States has a judgment in one district is a necessary party to a creditor's bill brought by the Government in another State and district to obtain satisfaction from the stockholders, is purely technical and, if not made in the Circuit Court of Appeals, cannot be availed of in this court as a ground for attacking a decree against the stockholders. P. 405.

6. Under Rule 24 of the Circuit Court of Appeals for the Eighth Circuit, a plain error may be noticed though not assigned or specified. *Held*, that such an error, refused consideration in that court because first called to its attention by petition for rehearing, was assignable and reviewable here. P. 405.

7. A judgment recovered by the United States as a fine in a prosecution by indictment does not bear interest, since interest is statutory, and Rev. Stats., § 966, the provision most nearly applicable, applies only to judgments recovered by civil process. *Id.*

257 Fed. Rep. 514, modified and affirmed.

APPEAL from a decree of the Circuit Court of Appeals affirming a decree of the District Court in favor of the

United States in a creditor's suit, brought by the Government against stockholders to satisfy a fine recovered from their corporation.

Mr. *Louis Marshall* for appellants.

*The Solicitor General*, with whom Mr. *Robert P. Frierson* was on the brief, for the United States.

MR. JUSTICE BRANDEIS delivered the opinion of the court.

In 1907 the Waters Pierce Oil Company, a Missouri corporation, was indicted in the District Court of the United States for the Western District of Louisiana under the Elkins Act (February 19, 1903, c. 708, § 2, 32 Stat. 847), for receiving rebates. In 1913 the Company sold and transferred all its property to the Pierce Oil Corporation; all the proceeds were paid to Henry S. Priest and Clay Arthur Pierce as trustees; and they distributed the same among the stockholders. Of these Henry Clay Pierce and the Pierce Investment Company, received millions in cash and stock and Clay Arthur Pierce a small amount. In 1914 the case under the Elkins Act was tried. The Company was convicted and sentenced to pay a fine of $14,000, and in the following year the judgment was affirmed by the Circuit Court of Appeals. 222 Fed. Rep. 69. An execution issued thereon to the marshal for that district and was returned *nulla bona.* Thereafter this bill in equity was brought by the United States in the Federal District Court for the Eastern District of Missouri against the Waters Pierce Oil Company, the trustees, and these three stockholders to obtain satisfaction of the judgment out of the money remaining in the hands of the trustees and that received by these stockholders. The District Court entered a decree dismissing the bill as against the Waters Pierce Company and the trustees, but granted, as against the stockholders

named, the relief prayed by the Government. The decree was affirmed by the Circuit Court of Appeals for the Eighth Circuit, one judge dissenting. The case is brought here by these defendants, under § 241 of the Judicial Code. Reversal is sought on several grounds.

*First.* The ground for reversal most strongly urged is that the judgment imposing a fine on the Waters Pierce Company is not a debt on which a creditor's bill will lie. The argument is that a judgment for a definite sum of money does not necessarily endow the holder with all the rights of a creditor; that a court will look behind a judgment and will grant or deny relief according to the nature of the original cause of action, as it did in *Wisconsin* v. *Pelican Insurance Co.*, 127 U. S. 265; *Louisiana* v. *New Orleans*, 109 U. S. 285; and *Wetmore* v. *Markoe*, 196 U. S. 68; and that, since liability for a penalty is criminal in its nature and not strictly a debt, a creditor's bill cannot be brought upon a judgment for a penalty. It is true that to the liability for penalties imposed by the United States certain incidents of a criminal proceeding attach; see *Boyd* v. *United States*, 116 U. S. 616; *United States* v. *Stevenson*, 215 U. S. 190, 199. But the liability is often enforced by civil proceedings and specifically by the action of debt. *Lees* v. *United States*, 150 U. S. 476. See *Adams* v. *Woods*, 2 Cranch, 336, 340. And then certain incidents of civil proceedings attach. *Hepner* v. *United States*, 213 U. S. 103.

By § 1041 of the Revised Statutes it is provided (in addition to the power existing by general usage to commit a defendant to jail until his fine has been paid, see *Ex parte Barclay*, 153 Fed. Rep. 669) that judgments for penalties "may be enforced by execution against the property of the defendant in like manner as judgments in civil cases are enforced." The statute applies to all judgments for penalties, whether recovered by civil or criminal proceedings. A judgment creditor's bill is in

essence an equitable execution comparable to proceedings supplementary to execution.  See *Ex parte Boyd*, 105 U. S. 647.  The law which sends a corporation into the world with the capacity to act imposes upon its assets liability for its acts.  The corporation cannot disable itself from responding by distributing its property among its stockholders and leaving remediless those having valid claims.  In such a case the claims after being reduced to judgments may be satisfied out of the assets in the hands of the stockholders.[1]  There is no good reason why the rule should be limited to judgments arising out of civil proceedings.  To the contention that the statute has not made this process available for the Government in enforcing a penalty, it may be answered as was done by the King's Bench a hundred years ago, in *King* v. *Woolf*, 2 Barn. & Ald. 609, 611, when it was insisted that a fine due to the Crown was not a judgment debt for which execution could be levied: ".  .  .  mischievous consequences would ensue to the crown and the regular administration of justice, from a delinquent withdrawing all his property from the effect of a judgment; and  .  .  .  the preventing that will not be a mischievous consequence to any one but himself.  Here there is a judgment that the defendant do pay to the king a fine of a certain sum.  By that judgment the debt becomes a debt to the king, of record; and it is payable to the king instanter.  .  .  .  if we were to say that the crown shall not be at liberty to issue an immediate execution for its own debt, we should place the crown in a worse situation than any subject."

*Second.*  It is contended that the right to bring a creditor's bill did not exist, because the judgment against

---

[1] *Wood* v. *Dummer*, 3 Mason, 308; *Railroad Co.* v. *Howard*, 7 Wall. 392; *Northern Pacific Ry. Co.* v. *Boyd*, 228 U. S. 482, 502; *Kansas City Southern Ry. Co.* v. *Guardian Trust Co.*, 240 U. S. 166; *Johnson* v. *Canfield-Swigart Co.*, 292 Ill. 101; *Hastings* v. *Drew*, 76 N. Y. 9.

the Company was not entered in the trial court until a
year after the Company had divested itself of the property
sought to be reached in this suit; and the Government
did not become a creditor, at all events until after its
claim for penalties had ripened into a judgment. But
when a corporation divests itself of all its assets by dis-
tributing them among the stockholders, those having
unsatisfied claims against it. may follow the assets, al-
though the claims were contested and unliquidated at
the time when the assets were distributed. It is true
that the bill to reach and apply the assets distributed
among the stockholders cannot, as a matter of equity
jurisdiction and procedure, be filed until the claim has
been reduced to judgment and the execution thereon
has been returned unsatisfied, *Hollins* v. *Brierfield Coal
& Iron Co.*, 150 U. S. 371; but, as a matter of substantive
law, the right to follow the distributed assets (see *Railroad
Co. v. Howard*, 7 Wall. 392, 409; *Northern Pacific Ry.
Co.* v. *Boyd*, 228 U. S. 482; *Kansas City Southern Ry. Co.*
v. *Guardian Trust Co.*, 240 U. S. 166) applies not only
to those who are creditors in the commercial sense, but
to all who hold unsatisfied claims. A corporation can-
not by divesting itself of all property leave remediless
the holder of a contingent claim, or the obligee of an
executory contract, *Baltimore & Ohio Telegraph Co.* v.
*Interstate Telegraph Co.*, 54 Fed. Rep. 50, or the holder of
a claim in tort, *Hastings* v. *Drew*, 76 N. Y. 9; *Jahn* v.
*Champagne Lumber Co.*, 157 Fed. Rep. 407; and there is
no good reason why the United States with a claim for
penalties should be in a worse plight. Here the stock-
holders receiving the assets are in the position of volun-
teers; and there is not even the excuse that they were
ignorant of the Government's claim. They were officers
of the corporation, and the indictment was pending when
the transfer of the assets was made. See *Baltimore &
Ohio Telegraph Co.* v. *Interstate Telegraph Co.*, *supra.*

*Third.* It is contended that the bill should have been dismissed because the execution issued to the marshal for the Eastern District of Missouri was not returned unsatisfied until after the commencement of the suit. It has been held that in litigations between private parties a creditor's bill cannot be maintained in a federal court upon a judgment recovered in a State other than that in which suit is brought, *National Tube Works Co. v. Ballou,* 146 U. S. 517, 523; and that a return unsatisfied of the execution issued on the judgment sued on is held essential to the maintenance of the creditor's suit, *Taylor v. Bowker,* 111 U. S. 110. But this strict rule is not applicable where the United States is the judgment creditor. Under § 986 of the Revised Statutes an execution issued in favor of the United States by any of its courts runs in every part of the United States; just as under § 985 an execution on a judgment obtained in favor of any party in a District Court, where the State is divided into two or more districts, may run and be executed in any part of the State. *Toland v. Sprague,* 12 Pet. 300, 328. Here the execution issued to the Louisiana marshal had been returned *nulla bona* before this suit was brought; and it is agreed that when this suit was begun the Waters Pierce Oil Company had no property in Missouri or elsewhere out of which the judgment could be satisfied at law. To hold that under such circumstances the suit must fail, because the return of *nulla bona* was not made by the marshal for the Eastern District of Missouri until after the filing of the original bill, would apply a well settled rule to a case not within its scope.

*Fourth.* It is contended that the bill should have been dismissed because the Government had an adequate remedy by suing the Pierce Oil Corporation, and, indeed, had commenced such a suit. That corporation assumed, as part of the purchase price of the Waters Pierce Oil Company, its "debts, obligations, and liabilities." Be-

fore commencing this suit the Government had brought, in a Federal District Court for Louisiana, a suit against the Pierce Oil Corporation to subject to the satisfaction of its judgment certain parcels of land conveyed to the corporation by the Waters Pierce Oil Company. But in the Louisiana suit the Pierce Oil Corporation denied liability insisting that the Government was not a creditor of the Waters Pierce Oil Company. The United States could not have been required to accept in lieu of its claim against the judgment debtor even an admitted obligation of the new corporation to pay it. The existence of that possible remedy did not bar the Government from following by a creditor's bill the assets of the corporation into the stockholder's hands. Nor did the suit against the Pierce Oil Corporation amount to an election of remedies which should have led the lower courts to dismiss this bill. The two remedies were consistent. See *Zimmerman* v. *Harding*, 227 U. S. 489, 494.

*Fifth.* The contention is faintly made that the decree should be reversed because the District Court dismissed the bill as against the Waters Pierce Oil Company, a necessary party; citing *Swan Land & Cattle Co.* v. *Frank*, 148 U. S. 603, 610. The argument ignores the fact that this judgment being in favor of the United States is, under § 986 of the Revised Statutes, effective and may be made the basis of an execution running in a State and district other than that in which the judgment was rendered. It was doubtless for this reason that the District Judge concluded that it was unnecessary, if not improper, to enter in this suit judgment against Waters Pierce Oil Company. The objection is purely technical. Since it was not set up among the many errors assigned in the Court of Appeals and in this court, it cannot be availed of here.

*Sixth.* It is urged that the District Court erred in allowing interest on the penalty ($14,000) from the date

of the indictment, January 29, 1907. This was not assigned as error in the Circuit Court of Appeals, and for this reason that court refused to consider it on a petition for rehearing. In the assignment of errors filed in this court the objection was properly raised. Under Rule 24 of the Circuit Court of Appeals for the Eighth Circuit the court may "notice a plain error not assigned or specified," and we think it should have done so in this case. In allowing interest from January 29, 1907, the District Court was clearly under the misapprehension that that was the date of the judgment, for the decree so recites; whereas, in fact, judgment was not entered until March, 1914. But interest was not even allowable from that time. At common law judgments do not bear interest; interest rests solely upon statutory provision. *Perkins* v. *Fourniquet*, 14 How. 328; *Washington & Georgetown R. R. Co.* v. *Harmon*, 147 U. S. 571, 584–5. The only applicable statute of the United States is § 966 of the Revised Statutes which provides that "Interest shall be allowed on all judgments in civil causes, . . ." Since the penalty was not recovered by civil process but by judgment in a proceeding initiated by a criminal indictment, it obviously does not fall within the terms of the statute. Interest, therefore, is allowable only on the judgment from the date when it was entered against the defendants in this case, namely March 11, 1918.

The judgment of the Circuit Court of Appeals as modified is

*Affirmed.*