## In re ARMBRUSTER STORE CO.

### LAMSON CO., Inc., v. INGALLS.
### No. 6347.

Circuit Court of Appeals, Sixth Circuit.
June 29, 1933.

E. Crosby Kindleberger, of New York City (Richard T. Rector, of Columbus, Ohio, Townsend & Kindleberger, of New York City, and Wilson & Rector, of Columbus, Ohio, on the brief), for appellant.

B. G. Watson, of Columbus, Ohio (Watson, Davis & Joseph and C. M. Gibson, all of Columbus, Ohio, on the brief), for appellee.

Before HICKS, HICKENLOOPER and SIMONS, Circuit Judges.

SIMONS, Circuit Judge.

The referee in bankruptcy, upon the trustee's objection, disallowed the appellant's claim against the bankrupt estate, and the District Court upon review affirmed. The appeal from the order below is based upon the following undisputed facts:

An Ohio corporation, under the name of Armbruster's, Inc., conducting a department store in Columbus, purchased from the appellant a carrier system under a conditional sales contract, not recorded as required by section 8568, Ohio General Code. Subsequent to the execution of the contract receivers were appointed for the corporation in the common pleas court of Franklin county, Ohio, who, upon qualifying, took possession of all of the assets, including the carrier system covered by the contract. Later an offer was made to the receivers by the principal stockholders of the corporation on behalf of a new corporation to be formed by them to purchase all of the assets of Armbruster's, Inc., for an amount sufficient to pay all cred-

itors 25 per cent. of their claims in cash, and expenses of administration. They also offered to cause to be issued by Armbruster's, Inc., to its creditors notes for the balance of their claims, to be secured by all of the capital stock of the new corporation, except qualifying shares, to be pledged with the old company. Upon receipt of this offer the receivers sent notice to all creditors setting forth the terms of the offer, and that it would be submitted to the court for confirmation or rejection on February 5, 1930, at which time creditors or other interested persons would be heard in support of or opposition thereto.

Upon the date set the offer was presented to the common pleas court in the receivership action, and all creditors were given an opportunity to be heard. No one opposing, and the court finding that all creditors had been notified, authorized the acceptance, and entered an order of confirmation which, among other things, provided: "In addition thereto, the purchasers shall assume all chattel mortgage indebtedness on the legally recorded mortgages on the fixtures herein ordered sold." Thereupon the sum of $50,000, estimated to be sufficient to comply with the offer, was paid to the receivers on behalf of a new corporation organized under the name of the Armbruster Store Company. The conditions of the order of sale were complied with, and the appellant, along with other creditors, received and accepted 25 per cent. of its claim in cash and five notes each for 15 per cent. of the balance. Early in 1931 the Armbruster Store Company was adjudicated a bankrupt, and the appellee became trustee of its estate. The notes given to appellant by the old corporation not having been paid, the appellant filed its claim thereon against the bankrupt estate.

The first grounds relied upon by the appellant in support of its claim are (1) that notwithstanding the conditional sale agreement was not filed as provided by section 8568 of the Ohio General Code, the Lamson Company was nevertheless a general creditor of Armbruster's, Inc., the old corporation, and (2) that the notes given at the time of the taking over of the carrier system by the Armbruster Store Company, the new corporation, were not in a composition in bankruptcy, so their nonpayment permits the Lamson Company, Inc., to claim the balance due under its contract. The validity of both contentions thus stated may well be conceded, and in fact is, without their being determinative of the issues here involved. The appellant's claim is not presented against the old

company, but against the new, and the appellant is not a creditor of the new company unless such relationship arises by contract or operation of law.

It is contended that the Armbruster Store Company assumed payment of the indebtedness due by the old corporation, and the case of Kennison v. International Clay Machinery Co., 13 F.(2d) 774 (C. C. A. 6), is relied upon. We are unable to see the relevance of the holding there to the facts here disclosed. There was in the Kennison Case no judicial sale, the contracting corporation there was reorganized under a new name, and the reorganized company expressly and without reservation assumed all of the liabilities of the original company. There was here no general assumption of liability on the part of the new corporation. The specific provision in the order of sale made by the state court requiring the bankrupt to assume liability for legally recorded chattel mortgages does not in any way that we are able to see affect the status of the appellant's claim. The appellant neither had nor pretended to have a chattel mortgage upon any of the store fixtures of the old company, and it is conceded that such instrument as it did possess was not recorded, either as required by the Ohio General Code or otherwise. Nor is there occasion here for the application of the principle of interpretation "expressio unius est exclusio alterius." Both the offer and the order of confirmation are quite explicit as to the indebtedness assumed, and under the terms of sale the manner of settlement for all other indebtedness was specifically provided. There is no occasion for the application of any principle of interpretation.

Finally it is contended that the two corporations, regardless of their separate technical existence, are one and the same entity, with the same officers and stockholders, and the court should look through form to substance and hold the new company liable for the debts of the old. Courts of equity will under some circumstances disregard the corporate form to prevent fraud or an unjust result, or when one corporation is in its essence but a continuation of the activities and interests of the other. Okmulgee Window Glass Co. v. Frink, 260 F. 159 (C. C. A. 8); In re Alamac Operating Corporation, 42 F. (2d) 120 (C. C. A. 2); Page v. Arkansas Natural Gas Corporation, 53 F.(2d) 27 (C. C. A. 8); Colonial Ice Cream Co. v. Southland Ice Utilities Corp., 60 App. D. C. 320, 53 F.(2d) 932; Gray Corporation v. Meehan, 54 F.(2d) 223 (C. C. A. 1); Pierce v. United States, 255 U. S. 398, 41 S. Ct. 365, 65 L. Ed. 697. Even receiverships and judicial sales, as the mechanism for the transfer of assets from one corporation to another, will be disregarded when they are mere weapons of coercion, or a means for the frustration of the public policy of the state or locality. Shapiro v. Wilgus, 287 U. S. 348, 53 S. Ct. 142, 77 L. Ed. 355. But we do not find in the circumstances of the present case any of the grounds for equitable disregard of the corporate form discussed in the cases cited. No fraud is here alleged or proved. All of the creditors of the original corporation had timely notice of the terms of the purchase offer, and an opportunity to be heard thereon. The appellant, along with other creditors, accepted the benefits of the sale, and was in no wise coerced. It does not stand in the position of a nonassenting creditor. Nor is any frustration of state policy suggested in the means here employed. Moreover, the appellant permitted the property to be sold and title thereto to pass without challenge to the new corporation. It was in reliance upon the new corporation's ownership of such property that credit was extended to the bankrupt company. To now permit the creditors of the old company to share in the estate, and thus to reduce pro tanto the dividends of the new creditors out of its avails, would be disregarding the corporate form to promote rather than prevent injustice, and equity will not present an attentive ear to the suggestion.

Some point is made of the payment to the appellant of 25 per cent. of the contract price, as though the fortuitous circumstance that it equalled the initial payment provided for in the contract brought about some sort of novation on the part of the bankrupt company, by which it obligated itself to assume the remaining contract payments. It is clearly without merit, and it may be not too much to say that counsel recognized its lack of virtue in failing to support it either by argument or citation. Nor is there substance to the further suggestion that the bankrupt somehow became obligated to the appellant by its use of the carrier system after purchase, with knowledge of the terms upon which it was originally sold to the old company. If the sale of the assets of the original company was valid, the purchaser certainly had a right to use its own property.

The order below is affirmed.