Eleanor H. VENDIG, as Alleged Transferee of the Assets of Mavco Sales, Inc., Petitioner,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 36, Docket 23447.

United States Court of Appeals Second Circuit.

Argued Nov. 9, 1955.

Decided Jan. 16, 1956.

Jacob I. Smith (Conrad & Smith), New York City, for petitioner.

Morton K. Rothschild, Washington, D. C. (H. Brian Holland, Asst. Atty. Gen., Ellis N. Slack, Atty., on the brief), for respondent.

Before CLARK, Chief Judge, and LUMBARD and WATERMAN, Circuit Judges.

WATERMAN, Circuit Judge.

Petitioner, Eleanor H. Vendig, seeks review of a decision of the Tax Court, 22 T.C. 1127, holding her liable as a transferee under 26 U.S.C. (I.R.C.1939)

§ 311 for unpaid taxes of Mavco Sales, Inc., a dissolved corporation.

Mavco Sales, Inc. (hereafter "Sales") was a New York corporation, which until its liquidation in January, 1946, was engaged in the manufacture and sale of plastic novelty items. All of Sales' issued and outstanding common stock was held by another corporation, originally incorporated as Malcolm A. Vendig, Inc., but which changed its name on January 24, 1946, to Mavco, Inc. (hereafter "Mavco"). On and prior to January 24, 1946, Mavco owned patents, molds, and dies, which it rented to Sales on a royalty basis. The only other outstanding stock of Sales consisted of 100 shares of preferred stock of the par value of $100 per share, or $10,000 total, all held by Eleanor H. Vendig, the petitioner.

On January 24, 1946, pursuant to resolutions adopted by Mavco's directors on January 15, 1946, a letter of agreement dated January 23, 1946, and resolutions adopted by Sales' directors on January 24, 1946, petitioner transferred her preferred stock of Sales to Mavco, and received from Mavco in exchange therefor 100 shares of preferred stock of Mavco of the par and agreed value of $100 per share, or $10,000 total. Sales was then dissolved pursuant to the New York Stock Corporation Law, art. 10, § 105, McK.Consol.Laws, c. 59, and all of its assets, subject to all of its liabilities, were transferred as a liquidating distribution to Mavco, which had become its sole stockholder. As a result of this transfer, Sales became devoid of assets with which to satisfy federal taxes in the amount of $29,000 for 1944, 1945, and 1946.

Since Mavco assumed all of the liabilities of Sales, the Commissioner could have assessed it for the unpaid taxes. But he chose to assess the petitioner to the extent of $10,000 for these unpaid taxes, and we are thus faced with the following questions briefed and argued by the parties: (1) Whether under 26 U.S.C. (I.R.C.1939) § 311 the petitioner is a "transferee" of $10,000 of assets of the taxpayer, Sales; (2) if so, whether the circumstances of the transfer were such as to impose upon her any liability, at law or in equity, for any unpaid taxes of the taxpayer; and (3) if the petitioner is liable for unpaid taxes of the taxpayer, Sales, to the extent of $10,000, whether Sales, which was dissolved in January, 1946, was entitled to deduct as a net operating loss carry-back the unused net operating losses for the calendar year 1946 of Mavco, to which the taxpayer's assets were transferred.

We resolve the first question favorably to the petitioner, and therefore it is unnecessary for us to discuss or to decide the other two questions.

In order to be liable as a "transferee" under 26 U.S.C. (I.R.C. 1939) § 311, the petitioner must have received property or assets which belonged to the taxpayer, Sales. We do not think that this petitioner did receive, directly or indirectly, property belonging to Sales.[1]

Before the dissolution of Sales, the business of manufacturing and selling plastic novelty items now conducted by Mavco was conducted by two corporations, Sales and Mavco. Sales was an operating company, and its assets consisted of certain plant, machinery, in-

1. Section 311 does not change the substantive law governing the relationship of debtor and creditor, but merely provides the Commissioner with a procedural device by which the Government, as a creditor, can assess tax deficiencies of a taxpayer (the debtor) to a "transferee" of the assets of the taxpayer. See Pierce v. United States, 1921, 255 U.S. 398, 41 S.Ct. 365, 65 L.Ed. 697; Phillips v. Commissioner, 1931, 283 U.S. 589, 51 S.Ct. 608, 75 L.Ed. 1289. If petitioner is liable to the amount of $10,000 to a judgment creditor of Sales whose execution has been returned unsatisfied, she is liable to the Commissioner under Section 311.
We do not think that a judgment creditor of Sales could successfully levy on petitioner as a result of the transaction which occurred here, but would be obliged to pursue the assets of Sales to Mavco, which now holds them, instead of to petitioner.

ventory, and accounts receivable, etc. Mavco was a holding company, owning all of Sales' common stock, and it received royalties from Sales for the use of certain patents, molds, and dies.

When petitioner exchanged her preferred stock of Sales for Mavco preferred of equal value, Mavco, as sole stockholder of Sales, was placed in a position to dissolve Sales. It did so, and the assets constituting Sales (its physical assets plus intangible property) became the property of Mavco, which used them to carry on the same business. The only fundamental change that took place as a result of this transaction is the simplification of the structure of ownership—a holding company and an operating company were merged to form one operating company. Although Sales became insolvent as a result of its liquidation, the assets which it held and which it used in its business were transferred to Mavco. So far as appears, those assets, although now in the possession of Mavco, remain available to creditors of Sales, including the Commissioner of Internal Revenue.[2] Petitioner as a shareholder had only a claim against Sales, and for this she substituted an identical claim against Mavco. By exchanging stock of Sales for stock of Mavco petitioner did not remove cash or other property from Sales, thereby harming creditors of Sales who were entitled to be paid before any distributions to shareholders.

The Commissioner, however, contends that the petitioner received assets belonging to Sales when she exchanged her interest in Sales for a like interest in Mavco. He considers the Mavco preferred which she received from Mavco in exchange for her Sales preferred as property of Sales. He does so under the theory that the transaction, in essence, is a sale of assets from Sales to Mavco, followed by a distribution of the receipts of the sale to the stockholders of Sales, including petitioner. If Sales had first sold its assets to Mavco, receiving in exchange stock of Mavco, and then had transferred this Mavco stock to its stockholders, including the petitioner, as a liquidating distribution of Sales, the petitioner would be liable as a transferee under Section 311. Hunn v. United States, 8 Cir., 1932, 60 F.2d 430; Fairless v. Commissioner, 6 Cir., 1933, 67 F.2d 475; and Caire v. Commissioner, 5 Cir., 1939, 101 F.2d 992.

The Tax Court and the Commissioner rely heavily on Bates Motor Transport Lines, Inc., v. Commissioner, 7 Cir., 1952, 200 F.2d 20, but we are convinced that the Bates case, to the extent that it is not distinguishable upon its facts,[3] was wrongly decided. The cases relied on by the Seventh Circuit all involved situations where there was clearly a sale of

2. We are aware that more than one person can be subject to transferee liability, Eleanor Lansburgh, Administratrix, 1937, 35 B.T.A. 928. Any person who receives "property of the taxpayer" is within the ambit of Section 311. But we do not think the Mavco preferred received by petitioner was "property of the taxpayer."

3. Bates, a corporation, the taxpayer, and one Standard, another corporation, entered into an agreement signed by Chaddick as president of both corporations, whereby Bates was to transfer all of its assets to Standard and liquidate itself, in consideration for which Standard was to assume Bates' liabilities and issue shares of its stock to Bates' stockholders on a share-for-share basis. The agreement was consummated, and, pursuant thereto, Chaddick, the majority stockholder of Bates, and the sole stockholder of Standard, received shares of Standard stock in exchange for a like number of shares of Bates, the taxpayer. The Commissioner assessed Chaddick as a transferee of assets belonging to Bates for tax deficiencies of Bates. The Tax Court held, 17 T.C. 151, 160, that Chaddick was not relieved of liability because the shares of Standard exchanged for the taxpayer's net assets were issued directly to him, instead of first being issued to the taxpayer and then redistributed to Chaddick on liquidation of the taxpayer. The Seventh Circuit affirmed, 200 F.2d 20. Chaddick was in full control of each of these corporations, whereas in the instant case Eleanor Vendig owned no voting stock whatever.

the taxpayer's assets to another corporation in return for shares of the second corporation's stock, and then a distribution of that stock to the taxpayer's stockholders. Hunn v. United States, 8 Cir., 1932, 60 F.2d 430; Fairless v. Commissioner, 6 Cir., 1933, 67 F.2d 475; Caire v. Commissioner, 5 Cir., 1939, 101 F.2d 992. The stock distributed to the stockholders in those cases represented the entire remaining assets of the taxpayer corporation, and the stockholders were clearly transferees of assets.

In the Bates case the Court thought that it should make no difference that the stock was distributed to the stockholders directly by the purchaser of the corporate assets. In prior cases, however, the transferee liability of the corporation receiving the assets had been made to turn precisely on this point— whether the vendee corporation's stock was distributed to the vendor corporation, or whether distributed to the vendor's stockholders. It was held that where the vendee corporation paid the stockholders directly, it was liable as a transferee because it left the vendor corporation without assets. Shepard v. Commissioner, 7 Cir., 1939, 101 F.2d 595; California Iron Yards Corp. v. Commissioner, 9 Cir., 1936, 82 F.2d 776; Magnolia Window Glass Company v. Commissioner, 1931, 23 B.T.A. 1241, 1242. On the other hand, where the vendee corporation paid the vendor corporation directly in money or stock, it was not liable as a transferee because it left the vendor with assets of the same value as those it had prior to the sale. Metropolitan Securities Corp. v. Commissioner, 1930, 19 B.T.A. 299.

It is also clear that when a stockholder sells his stock he is not liable in equity to a creditor of the corporation or subject to transferee liability for unpaid taxes of the corporation under Section 311. Lester L. Robison, 22 B.T.A. 395, affirmed sub nom. Commissioner of Internal Revenue v. Bryson, 9 Cir., 1935, 79 F.2d 397; I. T. S. Brown's Son Co., 1948, 10 T.C. 840; and cf. Motter v. Patterson, 10 Cir., 1933, 68 F.2d 252.

There is no "transferee" liability because the assets of the corporation have not been affected or diminished. The corporation retains the initial capital paid in by the stockholders, the only change being that the bundle of rights created by the stockholder's initial contribution of capital to the corporation now belongs to the purchasing stockholder rather than to the original stockholder.

In some cases where there is a transfer of a corporation's assets and subsequent liquidation of the corporation there may be some difficulty in determining whether there is a sale of stock followed by a distribution of the corporate assets to the vendee or a sale of assets followed by a distribution of the proceeds of the sale to the stockholders of the vendor. The form which the transaction took can usually be determined by examining the stockholders' resolutions and the other documents by which the transfer was effected. George M. Brady, 22 B.T.A. 596; H. S. Paulus, 30 B.T.A. 608, affirmed sub nom. Sheckles v. Commissioner, 5 Cir., 1937, 91 F.2d 192, certiorari denied, 1937, 302 U.S. 760, 58 S. Ct. 367, 82 L.Ed. 588. In the case now before us it is quite clear that the petitioner exchanged her Sales stock for stock of Mavco, and Mavco, as sole stockholder of Sales, liquidated Sales. There was not a sale of assets to Mavco followed by a liquidating dividend from Sales to the petitioner. We accept the following principles: Where the vendee issues its stock to the vendor corporation in return for assets of the vendor, then that stock becomes the asset of the vendor, and the stockholders who receive that asset are transferees of the vendor, and liable for its taxes under Section 311. But where, as in this case, the vendee issues its stock directly to the stockholders, then that stock never becomes a part of the vendor's assets, for these assets become the property of the vendee corporation when the vendor corporation ceases to exist.

It is true that this holding may allow the parties, under some circumstances,

to vary the tax consequences according to the manner in which a reorganization is conducted, but this does not affect the amount of the tax or the availability of property to satisfy it.

We therefore hold that the petitioner did not receive any "property of the taxpayer" and that she is not a transferee within the meaning of Section 311.

Reversed.